**The PEOPLE of the State of Colorado, Complainant,**

v.

**Jerry E. MILLS, Attorney–Respondent.**

No. 96SA235.

Supreme Court of Colorado, En Banc.

Aug. 19, 1996.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Nancy L. Cohen, Denver, for Attorney–Respondent.

**PER CURIAM.**

The respondent and the assistant disciplinary counsel entered into a stipulation, agreement, and conditional admission of misconduct. C.R.C.P. 241.18. The parties agreed in the conditional admission to the imposition of a suspension from the practice of law within the range of thirty to sixty days. An inquiry panel of the supreme court grievance committee approved the conditional admission; however, the panel was not unanimous as to its recommendation that the respondent be suspended for thirty days. We accept the conditional admission but conclude that suspension for sixty days is warranted.

I

The respondent and complainant agreed by stipulation to the following facts. Respondent was admitted to the Colorado bar in 1960. In August 1990, Kenneth Newby, a wheat farmer, retained the respondent regarding Newby's financial difficulties.

Newby and the respondent discussed filing a bankruptcy petition under either Chapter 11 (business reorganization) or Chapter 12 (family farmer). Although Newby qualified under Chapter 12, the respondent advised him that Chapter 11 would fit his needs. At that time, the respondent had never filed a Chapter 12 petition. Based on the respondent's advice, Newby later elected to file under Chapter 11.

On January 2, 1991, the respondent and Newby entered into a fee agreement which provided for a $12,000 flat fee and a $5,000 retainer, to be paid for services performed, or to be performed, under the agreement. The agreement also stated "that if a Chapter 11 case is filed, such bills shall not be paid until allowed by the bankruptcy court." Newby never paid the $5,000 retainer.

The respondent filed the Chapter 11 petition the next day, January 3, to stop a replevin action filed in December 1990, and in

which a hearing was scheduled that day. The respondent disclosed the fee agreement in three documents filed in the bankruptcy court: Newby's affidavit of financial affairs filed January 17, 1991; a verified statement of proposed attorney fees filed February 4; and the debtor's application for an order approving employment of attorney, attached to the fee agreement. In the last document, the respondent informed the court that "the applicant proposed to compensate the attorney at the rates set forth in the agreement, subject to the approval of the court after the rendering of such services."

Prior to filing the Chapter 11 petition, the respondent had already charged and collected $6,000 in legal fees between August 1990 and January 2, 1991. These fees were for services rendered in reviewing all options with respect to Newby's financial problems, including the bankruptcy option. Out of the $6,000, $500 was for advice related to bankruptcy. The respondent also collected $500 from Newby on January 2 to pay the bankruptcy petition filing fee. In March 1991, Newby paid the respondent an additional $3,000 in legal fees.

The respondent did not specifically disclose to the bankruptcy court the $500 legal fee he received prior to filing the Chapter 11 petition, as required by federal law. In the Statement of Financial Affairs for Debtor Engaged in Business, the respondent stated that Newby had paid money to the respondent for services rendered pre-petition. The respondent failed, however, to file an application for approval of the $3,000 in fees he received post-petition, as required under federal law.

In late March or April 1991, the respondent told Newby that he would be gone for about six weeks and would be in Montana on family business. The respondent's father was gravely ill.

Before leaving, on May 3, 1991, the respondent filed a motion to increase the time to file the reorganization plan from 120 to 240 days, and to gain acceptance of the plan from 180 to 300 days, from the date of the petition. The creditors did not object and the bankruptcy court approved the respondent's motion on June 14, 1991.

Meanwhile, on May 17, 1991, Newby's personal injury lawyer filed a combined motion to employ a professional person and to assume executory contract. Newby's personal injury lawyer or the personal injury lawyer's bankruptcy representative prepared the motion, which the respondent signed. The motion sought the court's authorization for Newby to hire a personal injury lawyer. The bankruptcy court granted the motion for separate counsel to represent Newby in his personal injury case.

The respondent states that in March or April 1991, before leaving for Montana, he advised Newby to obtain new counsel, although Newby disputes this. In any event, the respondent forwarded Newby's case file to another lawyer. Newby represents that he did not know of this until he was contacted by the other lawyer, who declined to take the case over, but personally returned Newby's file to him. Newby then tried on several occasions, without success, to contact the respondent at his Castle Rock telephone number. He did succeed in mid-July 1991 in finding a new lawyer who specialized in farmer bankruptcies.

On July 5, 1991, the respondent filed a motion to withdraw with the bankruptcy court, asserting that he had been in a remote area of Montana since his father's death on May 18, and that he was unable to return to Colorado to represent Newby. The motion to withdraw was granted on July 25, 1991, although Newby contends that he never received a copy of the respondent's motion and had not heard from the respondent since May. The respondent's motion contained a certificate of mailing, however, that indicated copies were sent to Newby and the United States Trustee.

Newby's application to retain the farmer bankruptcy specialist was granted by the court, and the new lawyer filed a motion to convert the Chapter 11 to a Chapter 12 bankruptcy. The court approved the conversion over the creditors' objections. The Chapter 12 reorganization was ultimately approved, and the bankruptcy was closed in early 1996. Meanwhile, on September 1,

1994, the bankruptcy court ordered the respondent to disgorge $9,500 in attorney fees.

The parties entered into a stipulation recently which provided that the respondent would pay Newby $6,000 on a payment schedule and that the September 1, 1994 disgorgement order would be vacated. The court approved the stipulation on January 2, 1996. The assistant disciplinary counsel states that the respondent is currently in full compliance with the terms of the stipulation and has paid $5,000 to Newby.

■ The respondent admits that he engaged in the following wrongful conduct: he failed to file an application for approval of the $500 fee he received pre-petition as well as $3,000 he received after the petition was filed, as required by federal law; and his acceptance of the final $3,000 payment from Newby constituted charging and collecting an illegal fee. After the bankruptcy petition was filed, the respondent was not entitled to compensation without court approval, and no such approval was sought. The respondent also stipulated that leaving Colorado while the bankruptcy proceeding was pending without providing his client with any means to communicate with him constituted engaging in conduct prejudicial to the administration of justice. The respondent therefore violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); and DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee).[1]

## II

■ In approving the stipulation, the inquiry panel recommended that the respondent be suspended for thirty days. The respondent's failure to properly divulge and obtain court authorization for the attorney fees he charged and collected in connection with the bankruptcy proceeding warrants at least a short period of suspension. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." *Id.* at 6.22. The parties agree that the following aggravating factors are present: the respondent has a history of previous discipline consisting of a public censure, *see People v. Mills,* 861 P.2d 708 (Colo. 1993), and a letter of admonition in 1990, ABA *Standards* 9.22(a); a dishonest or selfish motive, *id.* at 9.22(b); a pattern of misconduct including a letter of admonition issued in 1995, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); the vulnerability of the victim, *id.* at 9.22(h); and substantial experience in the practice of law, *id.* at 9.22(i).

The assistant disciplinary counsel stipulated to the following mitigating factors: the respondent was experiencing personal and emotional problems related to the death of his father during the time of the misconduct, *id.* at 9.32(c); the respondent has cooperated in the disciplinary process, *id.* at 9.22(e); and the imposition of other penalties or sanctions in the form of the stipulation following the disgorgement order, *id.* at 9.32(k). The assistant disciplinary counsel also indicates that the respondent's client will not sustain any actual injury since the respondent is in the process of paying him the $6,000 agreed to.

In light of the foregoing and respondent's previous discipline, including a public censure, we have determined that a suspension for sixty days is the appropriate disciplinary sanction. We therefore accept the conditional admission, and modify the inquiry panel's recommendation of discipline.

## III

It is hereby ordered that Jerry E. Mills be suspended for sixty days, effective thirty

---

1. The assistant disciplinary counsel indicates that it cannot be established by clear and convincing evidence that the respondent's conduct also violated DR 6–101(A)(1) (a lawyer shall not handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it); DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances); or DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer).

days after the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $2,325.26 to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202, within thirty days after the announcement of this opinion.